AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

**FILED**

for the

Eastern District of Missouri

**DEC – 6 2019**

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Precision Location Information; Subscriber &
Transactional Records; Cell Site Information; Pen
Register & Trap-and-Trace for Phone # (314) 250-1144.

)
)
)
)
)
)

Case No.  4:19 MJ 6450 PLC

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____SOUTHERN_____ District of _____FLORIDA_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., 841(a)(1) and 846, 843(b), 848 | controlled substances offenses; money laundering offenses |
| Title 18, U.S.C., 1956, 1957 | |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Derek Maguire, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____12/06/2019____

*Judge's signature*

City and state: _____St. Louis, MO_____

Hon. Patricia L. Cohen, U.S. Magistrate Judge
*Printed name and title*

**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEC - 6 2019

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
LOCATION INFORMATION, INCLUDING )
PRECISION LOCATION INFORMATION; )
SUBSCRIBER AND TRANSACTIONAL )
RECORDS; CELL SITE INFORMATION; )
AND FOR A PEN REGISTER AND TRAP )
AND TRACE DEVICES FOR PHONE )
NUMBER **(314) 250-1144**. )

No. 4:19 MJ 6450 PLC

**FILED UNDER SEAL**

**AFFIDAVIT**

I, Derek Maguire, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a warrant and order pursuant to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated with a cellular telephone number **(314) 250-1144** (hereinafter referred to as the "**subject cellular telephone**") to require AT&T (hereinafter "the Provider"), and/or any service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to disclose to the United States location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the **subject cellular telephone,** as described in Attachment B to the requested warrant and order.

2.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal

1

laws and duly authorized by the Attorney General to request a search warrant. I have been a DEA Special Agent since April of 2015. Prior to this assignment, I worked as a police officer for the St. Louis County, Missouri Police Department for eight (8) years. During the course of my law enforcement career, I have participated in numerous narcotics investigations which have resulted in the seizure of cocaine, cocaine base, heroin, fentanyl and methamphetamine. I am familiar with the various methods of operation of drug traffickers. I have utilized traditional methods of investigation including but not limited to; visual surveillance, interviewing witnesses, search and arrest warrants, court authorized wire interceptions and I have had countless conversations with informants and undercover agents.

3.      The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling

2

information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the **subject cellular telephone** is currently being used in connection with violations of Title 21, United States Code, Section(s) Section(s) 841(a)(1), 846, 843(b) 848, and Title 18 United States Code, Sections(s) 1956 and 1957 (hereinafter referred to as "the subject offenses"), by **TyDarryl GRIFFIN (GRIFFIN)**, and others known and unknown. There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

## BACKGROUND CONCERNING WIRELESS PROVIDERS

7.      Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a.      Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

3

b.      Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.  For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.  Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.  Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

c.      Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

d.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.  A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.  The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").   When a cellular

4

device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e.      Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

f.      Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

5

g.     In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States.     The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

## INVESTIGATION AND PROBABLE CAUSE

### A.     Background of Investigation

8.     The United States, including the DEA, is conducting a criminal investigation of **TyDarryl GRIFFIN**, and others known and unknown regarding the commission of the subject offenses.

9.     In January 2019, during a separate DEA St. Louis investigation (indicted under *United States v. Guy Goolsby et al.*, Cause No. 4:19-CR-00412 AGF PLC), investigators learned of Keyshia HARRIS' (HARRIS) involvement in the distribution of heroin and/or fentanyl in the St. Louis Metropolitan from a Source of Information ("SOI").[1] The SOI indicated HARRIS was

---

[1]     The SOI has been providing information to law enforcement since 1999 in other numerous unrelated investigations. SOI's cooperation has led to arrests, drug seizures, money seizures, and federal and state indictments. The SOI has no prior felony convictions and is being financially compensated for his/her cooperation. The information provided by SOI has been corroborated and is believed to be reliable based upon law enforcement actions and other related intelligence ascertained throughout the investigation.  The information provided by SOI has never been found to be false or misleading.

6

a member of the violent St. Louis-based street gang the "270 Sullivan Mob." The 270 Sullivan Mob is a criminal street gang that has been engaging in criminal activities in the area of the 2700 block of Sullivan Avenue in South St. Louis City for decades. Additionally, the SOI believed HARRIS was being sourced with heroin and/or fentanyl by Guy Goolsby ("Goolsby"), another known member and source to the 270 Sullivan Mob. In May of 2019, Goolsby was indicted in United States District Court – Eastern District of Missouri in a fifteen-person conspiracy for his involvement in large scale cocaine, heroin, and fentanyl trafficking from Mexico, through Texas and Florida. This is the same DEA investigation in which investigators initially learned of HARRIS drug trafficking activities. At the present time, Goolsby is being held by the United States Marshal Service until his case is fully adjudicated. Since Goolsby's indictment and confinement, investigators have learned HARRIS has continued to distribute ounce quantities of heroin / fentanyl and is believed to have acquired new sources of supply other than Goolsby.[2] This belief is based on information from CS-1 and CS-2, recorded telephone conversations with HARRIS over her predecessor telephone and target telephone #1, and several controlled purchases from HARRIS.

10.     During the initial phase of the investigation, investigators have utilized CS-1 and CS-2 to conduct six separate purchases of fentanyl from HARRIS in the City of St. Louis. The controlled purchases by CS-1 and CS-2 have revealed important information regarding to the HARRIS's distribution; but the CSs' involvement is strictly limited to interacting with HARRIS.

11.     On October 2, 2019, United States District Court Judge Henry E. Autrey, Eastern District of Missouri, issued an order authorizing the interception of wire and electronic

---

[2]     Although Guy Goolsby is mentioned in the instant affidavit as being an original source for HARRIS, investigators are confident since Goolsby's indictment and incarceration, HARRIS no longer communicates with Goolsby.

7

communications to and from Missouri-based telephone number (314) 845-4006 (target telephone #1), known to be utilized by HARRIS (Cause No. 4:19 MC-00720-HEA).   Interception of this telephone was initiated on October 2, 2019 and was terminated on October 31, 2019.

12.     As a result of court-authorized wire and electronic intercepts over HARRIS' target telephone #1, investigators learned **GRIFFIN** was one of HARRIS' primary source of supply for fentanyl and/or heroin.  Additionally, monitoring of HARRIS' target telephone #1, coupled with controlled drug buys with HARRIS and surveillances, allowed investigators to identify Barnard REED as being **GRIFFIN's** "stash house" operator and mid-level drug distributor, primarily distributing from 3502 Natural Bridge, St. Louis, Missouri.  Investigators then sought a court authorization to intercept and monitor **GRIFFIN**'s cellular telephone he was using at that time, Missouri-based telephone number (314) 243-1688 (target telephone #3.)

13.     On November 1, 2019, United States District Court Judge Audrey G Fleissig, Eastern District of Missouri, issued an order authorizing the interception of wire and electronic communications to and from **GRIFFIN**'s target telephone #3.  Interception of this telephone began November 5, 2019 and slated to terminate on December 4, 2019.  Since the interception period began **GRIFFIN** has since transitioned to using the **subject cellular telephone** and passed target telephone #3 to **GRIFFIN**'s "stash house" operator and distributor, identified as Barnard REED (REED). REED continues to use target telephone #3 to facilitate drug sales for **GRIFFIN**.  Results of the intercepted communications obtained pursuant to this order are discussed in more detail below.

**B.     Identification of GRIFFIN's use of the Subject Cellular Telephone.**

14.     On November 18, 2019 at approximately 2:46 p.m., investigators monitored an outgoing call (Call Session: 455) from target telephone #3, currently being used by REED, to

8

Missouri-based telephone number (314) 489-3814, used by unidentified male "KP".  During the intercepted call, REED spoke to "KP" briefly then handed target telephone #3 to **GRIFFIN** to speak to "KP."  Although **GRIFFIN** did not identify himself on target telephone #3, a voice comparison was conducted and identified that **GRIFFIN** was speaking at the time to "KP."  Also, at the time, on view surveillance units observed REED physically hand target telephone #3 over to **GRIFFIN** and begin to talk on the phone and then throw target telephone #3 directly back to REED.  Portions of the transcribed telephone conversation are directly quoted and explained below.  In light of the coded language, I have set out in parenthesis what investigators believe to be the meaning of the language based upon my training, my experience, and the instant investigation.

      a.    November 18, 2019 – 1:46 p.m. (Call Session: 455): Outgoing call from target telephone #3 to Missouri-based telephone (314) 489-3814, used by "KP."

| KP: | Yeah, you still working? |
|---|---|
| REED: | Huh? |

At that moment, REED handed target telephone #3 to **GRIFFIN** to speak to "KP".

| **GRIFFIN**: | Hey I (**GRIFFIN**) got a new number (**subject cellular telephone**). |
|---|---|
| KP: | Cool.  I'm just chillin'. |
| **GRIFFIN**: | He (REED) going to text you the new number (**subject cellular telephone**). |

Through training, experience, and the instant investigation, investigators believe the intercepted call consisted of **GRIFFIN** informing "KP" that **GRIFFIN** had obtained a new cellular device (**subject cellular telephone**) and that REED will text "KP" the telephone number to the **subject cellular telephone**.

15.     On November 18, 2019 at approximately 3:48 p.m., investigators monitored an outgoing text message (Call Session: 461) from target telephone #3 to Missouri-based telephone (314) 489-3814, used by "KP." Based on the investigative team's training and experience, the parenthetical remarks within any of the following transcripts are the investigative team's interpretation of the coded language used by the participants of the intercepted text. The following text was intercepted:

  a.   November 18, 2019 – 3:48 p.m. (Call Session: 461): Outgoing text message from target telephone #3, presently used by REED to "KP's" Missouri-based telephone number (314) 489-3814.

  REED:            The number is 250–1144 (telephone number to the **subject cellular telephone**)

Through training, experience, and the instant investigation, investigators believe the intercepted text message from REED using target telephone #3 to "KP" was REED sending "KP" **GRIFFIN**'s newly acquired cellular device (**subject cellular telephone**) as was discussed Call Session 455 above.

**C.     GRIFFIN's use of Subject Cellular Telephone.**

16.     On November 20, 2019 at approximately 2:22 p.m., investigators monitored an outgoing call (Call Session: 533) from target telephone #3, currently being used by REED, to the **subject cellular telephone**, used by **GRIFFIN**. During the intercepted call, REED informed **GRIFFIN** how much fentanyl REED had remaining. Portions of the transcribed telephone conversation are directly quoted and explained below. In light of the coded language, I have set out in parenthesis what investigators believe to be the meaning of the language based upon my training, my experience, and the instant investigation.

10

a.      November 20, 2019 – 2:22: p.m. (Call Session: 533): Outgoing call from target telephone #3, used by REED to the **subject cellular telephone** used by **GRIFFIN**.

| | |
|---|---|
| REED: | We (our drug trafficking organization) got thirty-two (units of fentanyl left). |
| **GRIFFIN**: | Thirty-two, what? |
| REED: | Grams (of fentanyl). |
| **GRIFFIN**: | Of what? Oh, what you (REED) mixed up (fentanyl and the cutting agent) together? |
| REED: | Yeah, when I (REED) mixed everything (the fentanyl and cutting agent) together.  What was left (32 grams remained). |
| **GRIFFIN**: | What you (REED) mean you mixed (fentanyl and cutting agent) that was left (remaining amount of drugs). |
| REED: | You say… |
| **GRIFFIN**: | Hold on, slow down.   Slow down, "Money" (REED)…so you just took…everything (the drugs) that was left (remaining quantity of drugs)…and it adds up to thirty-two (32 grams)? |
| REED: | Thirty-two point seven (32.7 grams). |

Through training, experience, and the instant investigation, investigators believe the intercepted call consisted of REED informing **GRIFFIN** that they only had 32 grams left of fentanyl left to sell. **GRIFFIN** confirmed this amount and confirmed that the amount of fentanyl had already been mixed with the cutting agent.

17.     The investigation has clearly demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving the ongoing commission of

the subject offenses.  I believe that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

18.     On December 5, 2019, United States District Court Judge John A. Ross, Eastern District of Missouri, issued an order authorizing the interception of wire and electronic communications to and from the **subject cellular telephone** (referenced in that affidavit as target telephone #4), known to be utilized by **GRIFFIN** (Cause No. 4:19MC00941 JAR).  Interception is pending activation by AT&T (the **subject cellular telephone**'s service provider) and will run for 30 days upon commencement.

### CONCLUSION

19.     Based on the above information, your affiant submits that there is probable cause to believe that the **subject cellular telephone** is currently being used in connection with the commission of the subject offenses, **GRIFFIN**, and others known and unknown.  There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

20.     None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass.  Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.  Furthermore, the criminal conduct being investigated is not limited to the daytime.  Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only.     Accordingly, the investigative agency(ies), and other authorized

federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

21.     The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

12/6/19
DATE

Derek Maguire
Special Agent
Drug Enforcement Administration


Sworn to and subscribed before me this __6__ day of December, 2019.

Patricia L. Cohen
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

13

## ATTACHMENT A

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &
B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a
Warrant and Order requiring a telecommunications service provider reflected in Part II of this
Attachment A, to disclose the records and other information concerning the account described in
Part I of this Attachment A.

### I.    The Account(s)

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| AT&T | **(314) 250-1144** (the **subject cellular telephone**) | LOCUS COMMUNICATIONS | **TyDarryl GRIFFIN** |

### II.   The Provider

Records and information associated with the **subject cellular telephone** that is within the
possession, custody, or control of **AT&T,** and other applicable service providers reflected on the
list contained in this Attachment A**,** including information about the location of the **subject
cellular telephone** if it is subsequently assigned a different call number.

1

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm |    Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
|   d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications |   Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications |   Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [3] |
| | Metro Teleconnect | | |

---

[3]  Last Update: 09/27/2019

## ATTACHMENT B

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

### I.  PRECISION LOCATION INFORMATION

#### A.  Information to be Disclosed by the Provider

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from December 6, 2019, to January 19, 2020, 11:59 p.m. (CT) during all times of day and night, regarding the location of the **subject cellular telephone** described in Attachment A.

"Information about the location of the **subject cellular telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

#### B.  Information to Be Seized by the United States

All information described above in Part I, Section A that constitutes evidence of violations of Title 21, United States Code, Section(s) Section(s) 841(a)(1), 846, 843(b) 848, and Title 18 United States Code, Sections(s) 1956 and 1957 involving **TyDarryl GRIFFIN**.

1

## II.    CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the **subject cellular telephone** identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1.    All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.    Length of service;

3.    All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI") numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

4.    Subscriber information available for any originating telephone number;

5.    Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the **subject cellular telephone**) for the above-specified time period;

6.    Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol)

addresses being utilized by and signaled to and from the aforementioned **subject cellular telephone**;

       7.     Cellular telephone records and information pertaining to the following, for the above-specified time period:

       (a)     call detail information (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

       (b)     cell site activation information, including information identifying the antenna tower receiving transmissions from the **subject cellular telephone**number, and any information on what portion of that tower is receiving a transmission from the **subject cellular telephone**number, at the beginning and end of a particular telephone call made to or received by the **subject cellular telephone**number;

       (c)     numbers dialed;

       (d)     call duration;

       (e)     incoming numbers if identified;

       (f)     signaling information pertaining to that number;

       (g)     a listing of all control channels and their corresponding cell sites;

       (h)     an engineering map showing all cell site tower locations, sectors and orientations;

       (i)     subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the **subject cellular telephone**;

3

(j)       historical location estimates, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD); and,

(k)       Internet Protocol (IP addresses) utilized by and signaled to and from the **subject cellular telephone.**

## III.   PEN REGISTERS AND TRAP AND TRACE DEVICES

For the **subject cellular telephone**identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.       Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the **subject cellular telephone**number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the **subject cellular telephone**described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

a.  IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

b.  Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to

4

send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c.  IP addresses of any websites or other servers to which the **subject cellular telephone**connected;

d.  Source and destination telephone numbers and email addresses;

e.  "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.      The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the **subject cellular telephone**identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized

5

federal/state/local law enforcement agencies, with the results of the pen register and trap and trace

devices, including enhanced caller identification, at reasonable intervals for the duration of this

Warrant and Order.

5.      Should the **subject cellular telephone**identified in Attachment A and/or ESN,

MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective

period of this Order, the request for pen register and trap and trace devices, including enhanced

caller identification, shall remain in effect for any new telephone to which the **subject cellular**

**telephone**listed above is changed throughout the effective period of these Warrants and Orders.

6.      The Providers reflected in Attachment A, to include providers of any type of wire

and/or electronic communications, and any other applicable service providers, shall be provided

compensation by the lead investigative agency for reasonable expenses incurred in providing

technical assistance.

7.      Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider,

and the service providers reflected in Attachment A, to include providers of any type of wire and/or

electronic communications, and any other applicable service providers, shall not disclose the

existence of this application and/or any warrant or order issued upon this application, or the

existence of the investigation, for a period of one year from the date of this Order to a subscriber

or lessee or to any other person, except that the provider may disclose the warrant to an attorney

for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined

in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling

6

information, including cell site information, precision location information, including GPS information, related to the **subject cellular telephone**.

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the **subject cellular telephone** by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.

7